**HOUSTON BUILDING SERVICE, INC., Appellant,**

v.

**AMERICAN GENERAL FIRE AND CASUALTY COMPANY, Appellee.**

No. 01–89–01213–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 23, 1990.

Rehearing Overruled Nov. 29, 1990.

Rayborn C. Johnson, Jr., Houston, for appellant.

Janet Giessel Townsley, Houston, for appellee.

Before O'CONNOR, SAM BASS and DUNN, JJ.

OPINION

O'CONNOR, Justice.

This is an appeal from a summary judgment. We affirm.

Houston Building Service, Inc. (HBS) provides janitorial services to commercial buildings. In May 1988, HBS employees negligently applied linseed oil to wooden doors and door frames while cleaning a building in Houston. After the application of the oil, the occupant of the premises complained that the linseed oil caused discoloration in the doors and frames, and that the doors were "sticky." The owner of the premises asked HBS to pay for the damage.

HBS made a claim under its commercial liability insurance policy, issued by American General Fire and Casualty Company (American General). American General refused to pay the claim, contending that the policy did not cover that type of property damage. HBS paid approximately $28,500 to the owner of the premises to repair the damage.

HBS sued American General on the policy. In its answer, American General quoted the exclusionary provisions in the insurance policy, and denied that it was liable. American General moved for summary judgment, and HBS filed a response.

On appeal, HBS brings only one point of error. HBS contends the trial court erred in granting the motion for summary judgment because there was a material fact issue concerning American General's obligation to pay the claim under the policy.

## I. Standard of review

To be entitled to a summary judgment, the movant must establish, as a matter of law, that no genuine issues of material fact exist. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1988, writ denied). A summary judgment that disposes of the entire case is proper only if, as a matter of law, HBS could not succeed upon any of the theories pleaded. *Lumpkin*, 755 S.W.2d at 539. In deciding whether there is a disputed fact issue, which is material and precludes summary judgment, we consider the evidence that favors the non-movant as true, we indulge every reasonable inference in favor of the non-movant, and we resolve any doubts in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The limited issue in this case is whether the policy clearly excluded coverage of property damage caused by HBS's employees.

## II. Exclusion 2.j.(6)

■ Under the "commercial general liability coverage form" of the insurance policy, there are numerous exclusions to property damage liability, including section 2.j.(6), which states:

2. Exclusions. This insurance does not apply to:

j. "Property damage" to:

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

The definitions in section V explain the exclusion in 2.j.(6):

11. a. "Products-completed operations hazard" includes all ... "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

12. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

15. *"Your work" means:*

a. *Work or operations performed by you* or on your behalf; and

b. Materials, parts or equipment furnished in connection which such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above. (Emphasis added)

Texas case law supports American General's assertion that provisions such as section 2.j.(6) exclude coverage for damage to the insured's work or product, as a result of faulty workmanship. *See Gar–Tex Constr. Co. v. Employers Casualty Co.,* 771 S.W.2d 639, 642 (Tex.App.—Dallas 1989, writ denied) (policy excluded cost of repair resulting from faulty work of insured); *Dorchester Dev. Corp. v. Safeco Ins. Co.,* 737 S.W.2d 380, 382 (Tex.App.—Dallas 1987, no writ) (policy did not cover damages to the building caused by faulty workmanship of the insured).

In *Dorchester,* the Dallas Court of Appeals clearly stated that there is absolutely no coverage for faulty workmanship. 737 S.W.2d at 382. The policy in *Dorchester* applied only if the defective work caused damage to *other work* of the insured which was *not defective. Id.* In *Dorchester,* as in this case, the insured did not contract for indemnification for property damage caused by its own defective workmanship. *Id.*

The exclusion provision in *Gar–Tex* was exactly the same as that in *Dorchester.* The holding of the court was also the same, and summary judgment was affirmed. 771 S.W.2d at 645.

HBS contends that the "products-completed operations hazard" exception to provision 2.j.(6) makes this case distinguishable. If the exception applies, then HBS is correct. But, American General asserts that the exception does not apply.

The "products-completed operations hazard" exception applies when the property damage arises out of the insured's work, on premises that the insured does not own or lease. The facts of this case show that the damage occurred at a place not owned or leased by HBS. But, the exception clearly states that it does not apply if the work has not yet been completed or abandoned. The policy states:

"Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

HBS was working on the premises where the damage occurred because it had a cleaning contract with the company that managed the building. The cleaning contract was attached as summary judgment evidence to HBS's response. Under the contract, HBS was to provide daily janitorial services for the building. The terms of the contract stated that it would be "in effect for one year from the effective date." The property damage occurred about three months after the contract was executed.

Because the agreement was an ongoing service contract, American General contends the "work" was not complete at the time of the damage, and the exception does not apply. HBS asserts that the contract required polishing of "vertical surfaces and wood paneling" annually, and that when it finished polishing the doors with linseed oil, its work was "completed." The above requirements clearly state, however, that *all of the work under the contract* must be complete. HBS had not completed all of its work when the property was damaged. The policy in *Gar–Tex* had a similar "completed operations hazard" provision, but it did not apply because Gar–Tex had not completed its work under the contract. 771 S.W.2d at 645.

The exception to exclusion 2.j.(6) does not apply. Under the exclusion, American General is not liable for the property damage.

## III.  Exclusion 2.j.(5)

American General also relied on the exclusion in section 2.j.(5) of the policy, which states:

2. Exclusions.  This insurance does not apply to:

j. "Property damage" to:

(5) That particular part of real property on which you ... are performing operations, if the "property damage" arises out of those operations.

HBS contends that it had "completed the operation" of polishing the doors, and the words "are performing" indicate that the provision applies only if the damage is simultaneous with the work.  We have already decided that HBS had not "completed" the work under the contract, according to the policy definitions.

■■■  HBS also asserts that the doors and door frames are not "real property." American General, however, argues that the doors and frames are fixtures.  A fixture is broadly defined as something that is personal in nature, but annexed to realty as to become part of the realty.  *Fenlon v. Jaffee*, 553 S.W.2d 422, 428 (Tex.Civ.App.— Tyler 1977, writ ref'd n.r.e.).[1]

In determining whether personalty has become a fixture, there are three factors to consider: (1) has there been a real or constructive annexation of the property in question to the realty?  (2) was there an adaptation of the article to the uses or purposes of the realty? and (3) did the party who annexed the chattel to the realty intend that it become a permanent accession to the property?  *Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex.1985); *Fenlon*, 553 S.W.2d at 428.

■■■  HBS argues that the doors and the frames could have been removed.  Thus, HBS asserts, they were not part of the realty but instead were personal property. When personal property is attached to realty and cannot be removed without materially damaging the property, it loses its character as personal property and becomes

part of the realty.  *Crabb v. Keyston Pipe & Supply Co.*, 177 S.W.2d 989, 991 (Tex. Civ.App.—Amarillo 1944, writ ref'd).  The removal of the frames would cause material damage to the building.  We acknowledge that doors could be removed without material structural damage to the rest of the structure.  The removal of doors, however, would certainly devalue the building, causing material damage to the rest of building.  Further, removability is not the only determining factor.  We must also consider the *Logan* factors.

Applying *Logan*, the doors and door frames in this case were annexed to a commercial building, and adapted for a specific use of the property.  American General contends that reasonable minds could not differ as to whether doors and frames, attached to an occupied commercial building, were intended to be a permanent accession to the real estate.  Intent is generally a fact issue, to be decided by a jury. 686 S.W.2d at 608.  Where reasonable minds cannot differ, however, the issue is one of law.  *Id.*  We find that exclusionary provision section 2.j.(5) applies in this case.

American General conclusively proved that, according to the two exclusionary provisions in the policy, it was not liable for the property damages, and summary judgment was proper.  We overrule HBS's sole point of error.

---

1. The Uniform Commercial Code defines fixtures as goods that become so related to particular real estate that an interest in them arises under real estate law.  TEX BUS. & COM.CODE ANN. § 9.313(a)(1) (Tex.UCC) (Vernon Supp.1990).