**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BORDER BOLT COMPANY, INC., a
Texas Corporation,

      Plaintiff-Counter Defendant-
Appellant,

v.

TWIN CITY FIRE INSURANCE
COMPANY, an Indiana Corporation,

      Defendant-Counter Claimant-
Appellee.

No. 97-1007
(D.C. No. 94-D-2858)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, Chief Judge, **LOGAN** and **MURPHY**, Circuit Judges.

---

    Border Bolt Co., Inc. (Border Bolt) brought this action against Twin City

Fire Insurance Co. (TCF) in state court, asserting four causes of action arising out

of TCF's failure to defend Border Bolt in a breach of contract case involving

Border Bolt's installation of defective bolts in a pedestrian bridge at Denver

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

International Airport (DIA). TCF removed the action to federal district court. The district court granted summary judgment in favor of TCF on its counterclaim for declaratory relief, holding TCF had no duty to defend Border Bolt in the underlying suit and no duty to indemnify it for amounts paid in settlement and for attorneys' fees. Border Bolt appeals and we affirm.

We review the grant or denial of summary judgment de novo applying the same standards as the district court. See Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1173 (10th Cir. 1996). Summary judgment is appropriate if the evidence before the court, when viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997).

A lengthy recitation of the facts is unnecessary. It is undisputed that Border Bolt installed defective bolts in the DIA bridge. The only issue is whether Border Bolt's insurer, TCF, had a duty to defend Border Bolt.

Under the policy terms, which include comprehensive general liability coverage, TCF had a duty to defend Border Bolt in the underlying action if the plaintiffs therein had alleged in their complaint that Border Bolt's installation of the defective bolts was an "occurrence" resulting in "property damage" within the meaning of the policy. Aplt. App. at 227. The policy defines "property damage"

as follows:

> a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

Id. at 238. The policy does not apply to "'[p]roperty damage' to '[the named insured's] product' arising out of it or any part of it." Id. at 229. Under Texas law, which applies here, courts construing similar insurance provisions have held that coverage for "property damage" excludes the insured's own work, thereby precluding insureds from recovering "'for any costs incurred in repairing and replacing the[ir] work product.'" Hartford Cas. Co. v. Cruse, 938 F.2d 601, 604 (5th Cir. 1991) (quoting Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 423 (5th Cir. 1982)). As such, the parties agree that in order to demonstrate covered "property damage," the complaint in the underlying action must have alleged damage to the bridge apart from repair and replacement of the defective bolts. See Gar-Tex Constr. Co. v. Employers Cas. Co., 771 S.W.2d 639, 643 (Tex. Ct. App. 1989); Eulich v. Home Indem. Co., 503 S.W.2d 846, 849 (Tex. Ct. App. 1973).

Border Bolt offers three arguments to support its position that the district court erred in concluding no such property damage was alleged: 1) that mere incorporation of defective materials damages the property into which it is

incorporated; 2) that the underlying complaint alleged actual physical damage to the bridge; and 3) that even if the complaint did not explicitly allege such damage, it is sufficiently ambiguous to permit the admission of extrinsic evidence demonstrating that the underlying plaintiffs intended to claim physical damage to the bridge. We address these arguments in turn.

Border Bolt contends that under Texas law, the mere incorporation of its defective product into the bridge constitutes "property damage." We disagree. The Texas Court of Appeals specifically rejected an insured's contention that incorporation of its defective product into a structure by itself results in "property damage" to the structure within the meaning of the policy. General Mfg. Co. v. CNA Lloyd's of Tex., 806 S.W.2d 297, 299-300 (Tex. Ct. App. 1991). In denying coverage, the court noted that the underlying claim merely sought repayment for replacing the insured's defective product and did not allege any diminution in value or actual injury to the third party's property in which the defective product was incorporated. Id. at 300.[1] The key question, therefore, is whether the

---

[1]The cases cited by Border Bolt simply do not support its "incorporation" theory. In all these cases, the underlying complaints clearly allege that the insured's defective product caused actual damage to another's property or that the necessary removal of the defective product resulted in physical injury to the property. See Stonewall Ins. Co. v Asbestos Claims Management, 73 F.3d 1178, 1208-09 (2d Cir. 1995); LaFarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 394-94 (5th Cir. 1995); Eljer Mfg., Inc. v. Liberty Mut. Ins. Co., 972 F.2d 805, 807 (7th Cir. 1992); Cruse, 938 F.2d at 602 & n.1; Dayton Indep. Sch. Dist. v.

(continued...)

plaintiffs in the underlying action alleged actual physical damage to the bridge.

Under Texas law, whether a complaint triggers an insurer's duty to defend is determined solely by reference to the face of the pleadings and the insurance policy, the so-called "eight corners" rule. See Cullen/Frost Bank of Dallas, 852 S.W.2d 252, 255 (Tex. Ct. App. 1993). "The duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy." Id. In determining an insurer's duty to defend, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co., 875 S.W.2d 788, 789 (Tex. Ct. App. 1994); see also Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 703-04 (5th Cir. 1996). It is therefore the *facts* pleaded in the complaint that control, not the mere mention of consequential damages. See Fidelity & Guaranty Ins. Underwriters, Inc., v. McManus, 633 S.W.2d 787, 788

---

[1](...continued)
National Gypsum Co., 682 F. Supp. 1403, 1407 (E.D. Tex. 1988), rev'd on other grounds sub nom. W.R. Grace & Co. v. Continental Cas. Co., 896 F.2d 865 (5th Cir. 1990).

In fact, the "incorporation" doctrine does not define what constitutes "property damage" at all. Rather, the rule governs *when*, for purposes of the coverage period, damage is said to occur. Under the rule, if an insured work product is incorporated into a larger structure, *and the structure* (as opposed to the work product) *is* ultimately *damaged as a result of the defective work by the insured*, the damage will be said to have occurred at the moment the defective items were incorporated. See Eljer Mfg., 972 F.2d at 807, 814.

(Tex. 1982) ("If the petition only alleges facts excluded by the policy, the insurer is not required to defend.").

Although it is undisputed that the underlying plaintiffs alleged no facts explicitly suggesting that the bridge itself was damaged by the defective bolts, Border Bolt asserts the complaint nevertheless created a duty to defend by including consequential damages in the request for relief. Because damage to the bridge could fall within the definition of consequential damages, Border Bolt maintains that the complaint created a duty to defend. This is an incorrect characterization of the law. In this case, the complaint addressed only damages resulting from the repair and replacement of the defective bolts. Texas law is clear that Border Bolt is not entitled to coverage for damage to that part of the bridge that constituted its own work. See General Mfg. Co., 806 S.W.2d at 300; Gar-Tex, 771 S.W.2d at 643. Since the complaint contains no facts alleging property damage to other parts of the bridge, Border Bolt cannot avert summary judgment based on the factual allegations in the complaint.[2]

---

[2]In addition to asserting an "incorporation" theory of property damage, Border Bolt appears to argue that summary judgment was inappropriate because the insertion of defective bolts into the bridge was an "occurrence," which also triggers coverage under the policy. An "occurrence" takes place "where the resulting injury or damage was unexpected or unintended, regardless of whether the policyholder's acts were intentional." Dayton Indep. Sch. Dist., 682 F.Supp. at 1408. Even so, the "occurrence" does not give rise to the duty to defend if the underlying complaint does not allege property damage. See Cruse, 938 F.2d 604-

-6-

Finally, Border Bolt asserts that the underlying plaintiffs' mention of consequential damages renders the complaint ambiguous and that the district court erred by not considering extrinsic evidence which would have created a fact question on whether the plaintiffs did in fact allege "property damage." We are not persuaded. Texas law requires us to consider only the facts contained in the complaint. LaFarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 393-94 (5th Cir. 1995); Duncanville Diagnostic Ctr., 875 S.W.2d at 789. As we have already noted, the complaint contains no allegation of property damage to the bridge. Since the complaint is not ambiguous, we need not consider extrinsic evidence even if we were permitted to do so by Texas law, a question we decline to reach in this diversity case. See LaFarge, 61 F.3d at 394 (rule allowing admission of extrinsic evidence is a "narrow exception" to construe "truly ambiguous complaints").[3]

In sum, because the complaint did not allege "property damage" under Texas law, TCF had no duty to defend Border Bolt in the underlying action. The

---

[2](...continued)
05.

[3]Border Bolt cites no case, and we have found none, in which a Texas court has admitted extrinsic evidence in a case similar to this one. Rather, the cases Border Bolt cites for its contention that consideration of extrinsic evidence is appropriate concern situations in which an insured appears to have intentionally concealed or misrepresented facts that would have excluded coverage. See LaFarge, 61 F.3d at 394-95 n.8.

fact that the underlying plaintiffs made no claim for covered "property damage" in turn dictates the conclusion that TCF had no duty to indemnify Border Bolt for amounts paid in settlement and attorneys' fees in the underlying lawsuit.

We **AFFIRM** the district court's order granting summary judgment in favor of TCF and dismissing the action in its entirety.

**ENTERED FOR THE COURT**

**Stephanie K. Seymour**
**Chief Judge**