**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-50925

WILSHIRE INSURANCE CO.

Plaintiff - Appellee

v.

RJT CONSTRUCTION, LLC

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

RJT Construction LLC, the insured, appeals the district court's summary judgment in favor of Wilshire Insurance Co., the insurer, in Wilshire's action seeking a declaratory judgment that it had no duty to defend.

I

Wilshire insured RJT under two consecutive commercial general liability policies running from June 2004 through June 2006. In 1999, RJT repaired the foundation of the home of William Ashbaugh after the home was damaged by an accidental discharge of plumbing water. RJT was hired to "raise[], level[], and stabiliz[e] the foundation of the residence that had been induced to move as a

result of the accidental discharge of water from a plumbing system." In late 2005, Ashbaugh alleges that cracks in the walls and ceilings suddenly appeared in his home, damage which he attributes to the foundation being out of level. In 2007, he sued RJT for negligently performing the foundation repair along the perimeter of the foundation and for failing to repair the foundation area beneath the interior of the house.

RJT sought a defense from Wilshire based on the CGL policy. Wilshire, in return, filed a diversity action seeking a declaratory judgment that it had no duty to defend or indemnify. The district court granted Wilshire's motion for summary judgment, finding that because the alleged property damage was the result of foundation movement, the policy's subsidence exclusion precluded coverage.

## II

We review legal determinations in a district court's decision to grant summary judgment *de novo*, applying the same legal standards as the district court to determine whether summary judgment was appropriate.[1] Texas applies the eight-corners rule to determine insurance coverage: "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations."[2]

Before reaching the issue that the district court found determinative—whether the subsidence exclusion precluded coverage—we first consider whether there was an occurrence within the policy period to trigger coverage. The policy is limited to covering damage that "occurs during the policy period," here June 2004 through June 2006.

---

[1] *Gonzalez v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004).

[2] *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

The Texas Supreme Court recently held as to a CGL policy similar to the policy in this case that "[o]ccurred means when *damage* occurred, not when *discovery* occurred."[3] There, homeowners sued a stucco supplier alleging that the stucco allowed moisture to seep into the walls causing internal wood rot which progressed unnoticed because of the undamaged exterior.[4] The supplier's CGL insurer sought a declaratory judgment that it had no duty to defend because the damage was not discovered until after the policy period.[5] In answering this Court's certified question, the Texas Supreme Court, based on the plain language of the policy which requires damage to occur during the policy period, made clear that "the key date is when injury happens, not when someone happens upon it."[6] If the third-party plaintiff's complaint alleges any amount of property damage that occurred during the policy period and that was caused by the insured, the duty to defend arises.[7]

Wilshire urges that the homeowner's complaint in this case makes no allegations that property damage occurred during the policy period. We disagree. The complaint alleges that "cracks in the walls and ceilings" were "suddenly appearing" in late 2005. The cracks themselves are physical damage allegedly caused by the faulty foundation. This is not a case where latent internal rot long lies undiscovered before external signs warn of the festering damage. The cracks are not merely a warning of prior undiscovered damage; they are the damage itself. It is of no moment that the faulty foundation work

---

[3] *Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 30 (Tex. 2008).

[4] *Id.* at 22–23.

[5] *Id.* at 23.

[6] *Id.* at 22.

[7] *Id.* at 31–32.

occurred in 1999,[8] or that the damage was discovered in 2005; it matters only that damage was alleged to have occurred in 2005.[9] The complaint's allegations trigger coverage unless an exclusion is applicable.

## III

The district court held that the policy's subsidence exclusion precluded coverage. The exclusion reads:

> It is agreed that this policy shall not apply to any claim of liability . . . caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from your operations or your subcontractor's operations.

The district court found the exclusion applied because the alleged foundation movement would not have occurred if not for the faulty repair. The court focused on the movement of the foundation. But the exclusion focuses on the movement of land, not of the foundation, listing examples of "landslide, mudflow, earth sinking or shifting." This movement of land must "result[] from the [insured's] operations."[10] Here, the complaint does not allege RJT's operations resulted in

---

[8] *Don's Building* quotes a leading treatise: "the time of the occurrence of the accident within an indemnity policy is generally not considered the time the wrongful act was committed but the time when the complaining party was actually damaged." 7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4491.01 (Walter F. Berdal ed., 1979).

[9] The complaint also makes an allegation regarding discovery: "Around late 2005, Plaintiff discovered that Defendants' product and services did not result in stabilizing and leveling the foundation or otherwise fixing the foundation problem." This allegation does not affect the analysis about when damage occurred. It does not contradict the allegation that damage occurred "suddenly" in 2005. The discovery in the allegation relates to when the plaintiff discovered the work was faulty, an allegation going to negligence or causation, not damage.

[10] The Ninth Circuit, in an unpublished opinion, interpreted a similar exclusion which precluded coverage for damage from subsidence resulting from the insured's operations. *United Capitol Ins. Co. v. Ferma Corp.*, 114 F.3d 1197 (9th Cir. 1997). The contested issue was whether the damage was the direct result of vibrations generated by the insured's equipment or whether the vibrations caused the land to "lose its lateral support, such that its earth and soil were caused to 'slip and subside,'" 1995 WL 481686, at *1 (N.D. Cal. 1995), which in turn

4

movement of the earth. Instead, when the earth moved from unknown or unalleged causes, RJT's negligent foundation work failed to stop the foundation from moving. In other words, it is not alleged RJT's operations resulted in subsidence; rather, the complaint alleges RJT failed to repair the foundation to withstand subsidence. The subsidence exclusion does not apply.

IV

Wilshire also argues that the "your work" exclusion precludes coverage. The exclusion states:

> This insurance does not apply to:
>
> 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

A CGL policy generally protects the insured when his work damages someone else's property. The "your work" exclusion prevents a CGL policy from morphing into a performance bond covering an insured's own work.[11]

The exclusion precludes coverage for the cost of repairing RJT's own work, the foundation. In *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*,[12] a homebuyer sued the homebuilder for damage that he attributed to defects in the home's foundation, which was built by a subcontractor. The homebuilder's work extended to the entire house and the Texas Supreme Court noted that the exclusion would have applied but for the subcontractor exception.[13] Here, the

---

caused the damage.

[11] *See Mid-Continent Casualty Co. v. JHP Development, Inc.*, 557 F.3d 207, 212 (5th Cir. 2009).

[12] 242 S.W.3d 1, 5 (Tex. 2007).

[13] *Id.* at 11.

foundation was RJT's own work, not that of a subcontractor to the insured. The exclusion applies to preclude coverage for repairing the foundation.

The exclusion, however, only precludes coverage for liability for repairing or replacing the insured's own defective work; it does not exclude coverage for damage to other property resulting from the defective work. In *Travelers Insurance Co. v. Volentine*,[14] the insured, an automobile mechanic, performed faulty work on an engine's valves which resulted in the destruction of the entire engine. The Texas appellate court noted that Volentine was not alleged to have worked on any other part of the engine but the valves and thus held that the "your work" exclusion precluded coverage for replacing the valves themselves, but "[t]o the extent those other parts [of the engine] were damaged or destroyed and Volentine is liable therefor, the policy affords coverage."[15]

The complaint alleges that the faulty foundation caused damage to other parts of the house that RJT did not work on including the walls and ceilings.[16] The "your work" exclusion does not preclude coverage for damage to the parts of the house resulting from the allegedly faulty foundation. Because these damages present a covered claim, Wilshire must defend the entire suit.[17] Having

---

[14] 578 S.W.2d 501, 503 (Tex. Civ. App.—Texarkana 1979).

[15] *Id.* at 504. *See also T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 694–95 (Tex. App.—Houston [14th Dist.] 1989) ("The purpose of comprehensive liability insurance coverage is to provide protection to the insured for personal injury or for property damage caused by the completed product but not for the replacement and repair of that product.").

[16] Wilshire submits that the complaint defines RJT's work to include the entire house. To the contrary, the complaint makes clear that RJT was brought onto the job as the "foundation repair subcontractor."

[17] *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) ("If a complaint potentially includes a covered claim, the insurer must defend the entire suit.").

found a duty to defend, we leave the ultimate question of coverage until full resolution of the case.[18]

REVERSED and REMANDED.

---

[18] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 5 (Tex. 2007) ("We do not reach the duty to indemnify, however, as that duty is not triggered by allegations but rather by proof at trial.").